Helen B. Seaver et al., Appellants-Respondents, *v.* New York Produce Exchange et al., Respondents-Appellants.

First Department, April 12, 1948.

*William B. Shealy* of counsel (*Vincent L. Pitaro* with him on the brief; *Wise, Shepard, Houghton & Kelly,* attorneys), for respondents-appellants.

*John E. Higgiston, Jr.* of counsel (*McCanliss & Early,* attorneys), for appellants-respondents.

DORE, J.  Plaintiffs, widow and son of a deceased member of defendant New York Produce Exchange, sued the Exchange and the trustees of its so-called gratuity fund for $618 claimed to be the balance of gratuity benefits due plaintiffs on the deceased member's certificate of membership in the Exchange.  The court granted plaintiffs summary judgment under rule 113 of the Rules of Civil Practice against both the Exchange and the trustees for the full amount sued upon, that is, $3 on 206 membership certificates or $618.  Defendants appeal from the order and judgment in plaintiffs' favor.  Plaintiffs appeal from so much of the order and judgment as struck out costs on the ground that plaintiffs could have sued in the city court (Civ. Prac. Act, § 1474, subd. 1).

John E. Seaver, the deceased, joined the Exchange in 1917, and died a member in good standing on July 7, 1940.  The by-laws of the Exchange provide that upon the death of any subscribing member, there shall be assessed against each subscribing membership the sum of $3 which shall thereupon be due to the Exchange " and shall be a lien on such membership."

On the death of Mr. Seaver, the Exchange levied the $3 assessment on all then outstanding memberships.  Out of 974 such members, 770 paid the assessment, the total collected aggregating $2,310.  Concededly that sum was paid to and received by plaintiffs.  The other 204 members ignored the assessment and failed to pay anything.  Pursuant to by-law provisions, such 204 memberships after due notice were put up for sale at public auction for failure to pay arrears on (1) dues owed to the Exchange and (2) unpaid gratuity assessments including the assessment in question.

At the auction 18 certificates of membership were purchased by outsiders for a total sum of $2,423, of which $1,286.69 was allocated to the general fund by way of partial reimbursement for unpaid Exchange dues and $1,120.31 was allocated to the gratuity fund by way of partial collections of unpaid gratuity assessment arrears on the certificates sold.  The allocations were made by taking that part of the net receipts which the amount

due to each fund bore to the total amount due. Out of the amount paid into the gratuity fund $26.53 was allocated to Seaver's membership certificate and this together with $6 on two other certificates, or a total of $32.53, was also offered to plaintiffs but refused by them.

The balance of 186 memberships put up for auction, on which no bids were made by outsiders, were bid in by the Exchange at various prices, but nothing was collected on such bids and therefore nothing was paid into the Exchange or the gratuity fund on such certificates and they were cancelled. On the ground that the by-laws made the gratuity assessments a lien upon the certificates, Special Term held that the Exchange was bound to pay the amount of such lien on the 186 certificates bid in by the Exchange, cancelled and retired. Plaintiffs are not entitled to recover on the lien theory and defendants are entitled to judgment.

Plaintiffs' rights are based on and limited by the Exchange by-laws containing the provisions for the so-called gratuity fund for families of deceased members and the rules of the Exchange in respect thereto. Section 57 of the by-laws expressly provides that " In no case " shall the total paid to beneficiaries of any person admitted after 1905 (as decedent was) " exceed the sum produced by an assessment of $3.00 on each subscribing member at the time of such person's death "; that the liability of the Exchange in connection with the gratuity is " limited to the payment * * * of such sums * * * as may be collected, after it shall have been collected from the members "; that, when the Exchange retires membership certificates acquired at a sale, the trustees of the gratuity fund may determine " the arrears of Gratuity assessments against such certificates * * *. to be uncollectible, and the same may then be cancelled upon the records and accounts of the Gratuity Fund."

Section 21, the by-law concerning annual and gratuity assessments, provides that on the termination of membership for failure to pay, the board shall direct the certificate of membership to be sold at public auction and the purchasers are entitled in the first instance only to a memorandum of sale on the presentation of which a new certificate may be issued on payment of unpaid assessments on the memorandum and initiation fees " and the certificate so sold shall, after such sale, be considered cancelled, and shall be void."

Plaintiffs do not question the validity of the by-laws or the power of the board of managers reasonably to construe and interpret them but rely on the provision that the assessment " shall

be a lien on such membership." This is the basis of Special Term's ruling that the Exchange is in no better position than any other purchaser would be regarding the lien and is therefore obligated to pay the $3 assessment.

Reading together, as we must, all the relevant provisions of the by-laws, we think the Exchange proceeded in accordance therewith and was not obliged to pay from its general funds gratuity assessment arrears that were not collected or collectible. The lien was imposed to enforce payment and collection of arrears against members and holders of certificates. Throughout section 57, containing the provisions for the families of deceased members, the reference is to money *collected*. The $3 assessments are made a lien on " such membership " but such lien was not made part of the corpus of the trust unless the assessment was collected. On the auction of the 186 certificates bid in by the Exchange nothing was collected from the members or anyone else and if nothing was collected nothing was required to be paid into the fund.

Apparently the Exchange exercised the full powers granted to it under the by-laws in an honest effort to enforce collection of arrears for dues and gratuity assessments against defaulting members. There is no claim or proof that the auctions were conducted fraudulently or in bad faith. The Exchange had every motive to collect for itself the arrears of dues on the certificates sold as well as to collect the arrears of gratuity assessments. Section 21 of the by-laws provides that on a sale the treasurer shall pay the expenses of the sale " and the assessment or assessments due on said certificate and the balance shall be paid to the person in whose name the certificate " was on the books. This clearly provides what will happen to a surplus, if any, that is collected on the sale. On the sales in question there were no surpluses. If it be said that by retiring certificates the balance of the certificate holders remaining have *pro tanto* a greater equity interest, it must be remembered that these plaintiffs still retain the certificate of their deceased member and such certificate would share in any such increased equity interest.

In bidding in at public auction certificates for which there were no outside bids, on this record the Exchange did not render itself liable to pay the full $3 mortuary assessment irrespective of whether anything was collected at the auction. The liability of the Exchange in connection with the gratuity fund is expressly limited to payment of the sums collected and in no case may the amount paid to beneficiaries exceed such sum. The by-laws expressly authorize the trustees of the fund

to determine whether the arrears are uncollectible and, if so, they may be cancelled upon the records of the fund. This was done and the good faith of the trustees in so doing is not here challenged. Where nothing was collected and nothing was collectible the certificates as well as the arrears of uncollected gratuity assessments were properly cancelled.

Defendants concede plaintiffs were entitled to payment from the trust fund of a balance of $32.53 representing $3 paid by two additional membership certificates and the allocated partial membership collection of assessment arrears of $26.53 on the eighteen certificates sold to outsiders.

Under section 1472 of the Civil Practice Act, in an action for a sum of money only, plaintiff is not entitled to costs unless plaintiff recovers the sum of $50 or more. For this reason on plaintiffs' appeal the order and judgment insofar as they deny costs should be affirmed.

The order and judgment appealed from insofar as they grant plaintiffs' motion for summary judgment, should be modified, without costs of this appeal, and judgment rendered in plaintiffs' favor for $32.53, the balance conceded to be due, but without interest as that sum was offered plaintiffs; and except for such allowance the complaint should be dismissed, without costs.

PECK, P. J., GLENNON, COHN and VAN VOORHIS, JJ., concur.

Order and judgment, insofar as they grant plaintiffs' motion for summary judgment, unanimously modified without costs of this appeal, and the judgment rendered in plaintiffs' favor for $32.53, the balance conceded to be due, but without interest as that sum was offered plaintiffs; and except for such allowance the complaint should be dismissed, without costs. Settle order on notice.